IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| DARLA STEWART, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 2:10-CV-04126 NKL |
| ) | |
| CITY OF OSAGE BEACH, ) | |
| ) | |
| Defendant. ) | |
| ) | |
| ) | |

**ORDER**

Plaintiff Darla Stewart is a former employee of the City of Osage Beach, having spent nearly 20 years with the Osage Beach Police Department. She was terminated in August 2008 because her doctor did not clear her to work nights. She contends that emotional problems prevented night work and that the Americans with Disability Act ("ADA") and the Missouri Human Rights Act ("MHRA") required Osage Beach to give her the accommodation of working the day shift. Osage Beach has moved for summary judgment (Doc. # 18) which the Court now grants.

**I.   Background**

   **A.   Uncontroverted Facts[1]**

---

[1]The Court has considered the parties' statements of fact which are supported by admissible evidence. In considering this motion, the Court has drawn all inferences in favor of the non-movant.

1

From 1984 to approximately 1987, Stewart worked as a dispatcher for the Lake Ozark Police Department. In that position, Stewart worked a shift beginning at 7:00 p.m. and ending at 7:00 a.m. She asked to be moved to the day shift because she was bothered by anxiety and depression stemming from childhood abuse. She was told there was not a day shift position open and she continued thereafter to work the night shift. After her employment at the Lake Ozark Police Department, Stewart worked at a factory on a shift beginning at 3:15 p.m. and ending at 12:00 a.m. for approximately three months. Then, from December 1988 to August 2008, Stewart was employed as a Communications Officer at the Osage Beach Police Department's 911 Center. After working some nights during her first two weeks of employment with Osage Beach, Stewart requested a switch to day shifts. That request was granted, and she worked exclusively day shifts for almost twenty years.

Osage Beach's 911 Center must be staffed 24 hours per day and 7 days per week. The job description prepared by Osage Beach for both the positions of Lead Communications Officer and Communications Officer lists among the "Essential Functions": "May work a varied schedule including evenings, weekends, and holidays . . . ." [Doc. # 27-1 at 4.] It is undisputed that Osage Beach's employee training and other scheduling needs occasionally make it necessary for communications officers to change shifts.

On January 1, 2008, Stewart became the Lead Communications Officer at the Osage Beach Police Department. This was a promotion. As a Lead Communications Officer, Stewart worked until 11:00 p.m. once, 1:00 a.m. once, and 3:00 a.m. once. The one time Stewart worked until 3:00 a.m., she experienced anxiety. Stewart requested that she be demoted from Lead Communications Officer to Communications Officer shortly thereafter. Stewart cited the duties and job description of the Lead Communications Officer as some of the reasons for her request. Effective January 12, 2008, Stewart was returned to Communications Officer status.

After her voluntary demotion, Stewart was scheduled to move to the night shift so that new employees could be trained, but she arranged to have one of her co-workers cover that month for her. On May 7, 2008, the Communications Supervisor, Sherie Smith, sent a memorandum by email to the 911 Center staff, informing them of a temporary schedule change in order to train new employees. The memo stated that effective May 16, 2008, Stewart would move to the night shift with one of the new employees, and would move back to the day shift on June 9, 2008.

Stewart responded to Smith via email: "I cannot work night shift due to health reasons. Thanks; 'D',". Smith forwarded a copy of Stewart's response to Cindy Leigh, the Human Resources Generalist for Osage Beach [Doc. # 27-1 at 9]. Leigh responded to Stewart, stating that "the 911 Center is a 24 hour / 7 day operation and all employees of the 911 Center must be prepared to work all shifts: days, evenings, weekends, and

holidays. This is included in the essential functions of the Communications Officer's job description." [Doc. # 27-1 at 8.] Leigh invited Stewart to complete a short term disability claim form if she had a temporary health problem, but stated that Stewart would be required to provide a physician's release to work all shifts before she would be permitted to return to work. In a reply email, Stewart responded to Leigh that she had been diagnosed with Post Traumatic Stress Disorder ("PTSD"), which affected her at night, and that working nights would both disrupt her medication schedule and possibly put Osage Beach at risk. She further stated that because she needed her job, she would cover the upcoming night shifts if she was given written instructions that working the night shifts was "mandated." [Doc. # 27-1 at 8.] That afternoon, Stewart met with Leigh and stated that she could not work the hours of 3:00 a.m. to 7:00 a.m. because the PTSD affected her at nighttime and because of the medicine she was taking.

On May 13, 2008, Stewart met with Osage Beach's occupational physician, Dr. Abbott, to determine whether Stewart's concerns about her medical conditions would affect her ability to work the night shift. Dr. Abbott consulted with Stewart's dentist, family doctor, and counselor, and concluded that Stewart was able to safely work the night shift for a short period of time without placing herself or anyone else at long-term risk. The doctor did not mention possible short term negative effects that Stewart might suffer.

On May 19, 2008, Stewart submitted her request for family medical leave. The stated purpose of the requested leave was: "Treatment for serious chronic health condition which if left untreated will result in absence." [Doc. # 19 at 10.] On May 21, 2008, Stewart's physician, Dr. Neis, completed a Certification of Health Care Provider in support of Stewart's request for leave. Dr. Neis's certification references Stewart's condition of PTSD and states, "Because of Darla's present mental state she is unable to report to work at this time." [Doc. # 19-4 at 7.] Also on May 21, 2008, Osage Beach notified Stewart that her request for family leave was approved, with an expiration date of August 12, 2008.

Dr. Neis completed an Attending Physician's Statement in support of Stewart's short term disability claim dated May 22, 2008. This statement confirmed that Stewart ceased work on May 21, 2008, because her condition affected her at night, and that Dr. Neis advised Stewart to cease work. Under the "Return to Work" section of Dr. Neis's statement, question (a) asked "When do you expect improvement in the patient's capabilities?" to which Dr. Neis answered: "No." [Doc. # 19-3 at 14.] Under the heading "Restrictions (activities patient should not do)," Dr. Neis answered "limited stress situations." [Doc. # 19-3 at 14.] On June 9, 2008, Stewart was approved for short term disability by Osage Beach's insurance carrier, with benefits approved through July 6, 2008.

By a letter to Osage Beach dated August 5, 2008, Stewart's Legal Professional Counselor, Nancy Pope, stated that Stewart "has diagnoses of Post Traumatic Stress Disorder; Major Depressive Disorder Recurrent and Unspecified; and Generalized Anxiety Disorder." [Doc. # 19-3 at 5.] Pope stated that Stewart "knows that working nights re-triggers fears of rape and assault, like what she experienced as a child," and that "it would be reasonable for the Osage Beach Police Department to accommodate [Stewart's] mental health disabilities by excluding her from working nights." [Doc. # 19-3 at 5.] Osage Beach asked Pope for copies of her credentials and licensures in reference to Stewart's diagnoses, and Pope provided them on August 11, 2008.

By letter dated August 18, 2008, Osage Beach asked Stewart's physician, Dr. Neis, to elaborate on Pope's representations regarding Stewart's diagnoses, her current limitations, and whether Dr. Neis's diagnosis of Stewart had changed since his attending physician statement submitted in connection with Stewart's short term disability claim. Three days later, Osage Beach received from Dr. Neis a copy of Osage Beach's letter of August 18, 2008, with the handwritten notations: "Unchanged from past correspondence." [Doc. # 19-4 at 19.] Osage Beach wrote to Dr. Neis asking to what correspondence the handwritten notation referred. Dr. Neis's office responded to Osage Beach's inquiry by faxing back a copy of Osage Beach's August 21, 2008 letter with the handwritten notation "Attending Physician Statement Dated 5-22-08." [Doc. # 19-3 at 3.] Osage Beach then confirmed over the telephone with Dr. Neis's office that Stewart was

6

last seen by Dr. Neis on July 10, 2008, for a checkup and a refill of medications, and that nothing had changed since May 22, 2008.

By letter dated August 21, 2008, Osage Beach informed Stewart that the documentation it had received did not constitute a disability as defined by the ADA, and informed Stewart that she would need to return to work on Wednesday, August 27, 2008, after providing a return to duty certificate from her doctor releasing her to work days, nights, holidays, and weekends, or her employment with Osage Beach would be terminated. Osage Beach's FMLA policy states: "If an employee has taken leave because of his/her serious medical condition, the employee will be required to submit medical certification as to the ability to return to work. The certification should be submitted to the Human Resources Specialist prior to the return-to-work date." [Doc. # 19-4 at 6.] Stewart was not cleared by her doctor to work nights, and was terminated for not reporting to her August 27, 2008 shift.

### B. Procedural History

When Stewart was terminated from employment on August 27, 2008, she filed a formal grievance. She also timely filed charges of discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging a violation of the ADA, and charges with the Missouri Commission on Human Rights ("MCHR") alleging a violation of the MHRA. After she received right-to-sue letters from both the MCHR and EEOC, Stewart filed this employment action against Osage Beach alleging two counts. Count I

asserts a claim for Unlawful Termination in Violation of the ADA, and Count II asserts a claim for Discrimination under the MHRA.

## II. Discussion

### A. Whether Stewart Has Established a Prima Facie Case under the ADA

In its Motion for Summary Judgment, Osage Beach argues that Stewart has failed to establish a prima facie case of discrimination under the ADA. In order to establish a prima facie disability discrimination claim, Stewart must prove that she:

> (1) had a disability within the meaning of the ADA; (2) was qualified, with or without a reasonable accommodation, to perform the essential job functions of the position in question; and (3) suffered an adverse employment action because of [her] disability.

*Lors v. Dean*, 595 F.3d 831, 834 (8th Cir. 2010) (quoting *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 804 (1973)). After a prima facie case of disability discrimination is established, the burden shifts to the employer to articulate some legitimate, nondiscriminatory reason for the employer's actions. *Id.* If the employer articulates such a reason, the burden returns to the employee to show the employer's justification is a pretext. *Id.*

#### 1. Whether Stewart had an ADA Disability

The ADA defines the term "disability" as:

(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;

(B) a record of such an impairment; or

(C) being regarded as having such an impairment.

42 U.S.C. § 12102(2).

### a. Whether Stewart was Substantially Limited in a Major Life Activity

Stewart pled in her Complaint that the "severe aggravation of her PTSD at nighttime" is a "mental and physical impairment that substantially limits her in performing the major life activity of working." [Doc. # 1 at 5-6.] Stewart states in her Suggestions in Opposition to Summary Judgment that her anxiety, depression, and PTSD, which have been worsening over the years, are impairments under the ADA because they substantially limit her ability to concentrate and think at night, particularly during the hours of 3:00 a.m. to 7:00 a.m. Osage Beach objects to Stewart expanding her impairments to include thinking and concentrating because she did not make those allegations in her Complaint. But for purposes of summary judgment only, the Court will consider whether Stewart has shown that her depression, anxiety and PTSD substantially limit her in the major life activities of thinking, concentrating and working.

An impairment is "substantially limiting" if it renders an individual unable to perform a major life activity that the average person in the general population can perform, or if it significantly restricts the condition, manner, or duration under which an individual can perform a particular major life activity as compared to an average person in the general population. 29 C.F.R. § 1630.2(j)(1)(i)-(ii). The following factors are considered in determining whether a person is substantially limited in a major life

9

activity: (1) the nature and severity of the impairment; (2) its duration or anticipated duration; and (3) its long-term impact. 29 C.F.R. § 1630.2(j)(2)(i)-(iii). Individuals with medical conditions are not *per se* disabled, so the evidence in support of an individual's contention must be more than generic "evidence of a medical diagnosis of an impairment." *Kirkeberg v. Can. Pac. Ry.*, 619 F.3d 898, 903 (8th Cir. 2010) (citing *Ristrom v. Asbestos Workers Local 34 Joint Apprentice Comm.*, 370 F.3d 763, 769 (8th Cir. 2004)). Therefore, Stewart must present evidence showing the degree to which she personally is affected and limited by her conditions. Conclusory statements do not suffice. *Id.* at 903, 906.

To show that she is substantially limited in the major life activity of working, Stewart must present evidence that her overall employment opportunities are limited. *Fjellestad v. Pizza Hut of Am., Inc.*, 188 F.3d 944, 949 (8th Cir. 1999). Specifically, she must show that her condition restricts her ability to perform "a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable skills and training." *Perkins v. St. Louis County Water Co.*, 160 F.3d 446, 448 (8th Cir. 1998).

Stewart has failed to show that her PTSD, depression and anxiety substantially limit her major life activity of working. Stewart has not shown that her disability prevents her from overall employment opportunities, nor that she is precluded from either a class of jobs or a broad range of jobs in various classes as compared to the average

person having comparable skills and training. Rather, Stewart states she is only affected by her impairments between the hours of 3:00 a.m. and 7:00 a.m., remaining unaffected during the other twenty hours of the day. Being limited to a forty hour work schedule does not demonstrate that the major life activity of working has been substantially limited. *Taylor v. Nimock's Oil Co.* 214 F.3d 957 (8th Cir. 2000). Similarly, being limited to day time work does not satisfy this threshold requirement. In *Heisler v. Metro. Council*, 339 F.3d 622 (8th Cir. 2003) the Eighth Circuit said: "Heisler has repeatedly denied that her depression substantially limits her ability to work, where her psychologist has released her to work 40-hour weeks but limited her to the hours between 6 AM and 5 PM. And rightly so, as we have repeatedly held that '[a]n employee is not substantially limited in the major life activity of working by virtue of being limited to a forty-hour work week.'" *Id.* at 627 n.4 (quoting *Kellogg v. Union Pac. R.R. Co.*, 233 F.3d 1083, 1087 (8th Cir. 2000), and citing *Taylor v. Nimock's Oil Co.*, 214 F.3d 957, 960-61 (8th Cir. 2000); *Berg v. Norand Corp.*, 169 F.3d 1140, 1145 (8th Cir. 1999)).

Likewise, Stewart has failed to show that her depression, anxiety, and PTSD substantially limit her major life activities of thinking and concentrating. Her counselor's diagnosis that "night work is out of the question," [Doc. # 27 at 15-16] does not establish a genuine issue of material fact because a diagnosis alone does prove a disability. Beyond these medical diagnoses and work restrictions, Stewart does not describe how her impairments affect the condition, manner, or duration of her thinking or concentration,

11

nor how her performance of those activities compares to the general population. In fact, Stewart admits she worked night shifts on more than one occasion for Osage Beach and Stewart also states "at all times during her employment by Defendant, Plaintiff performed the duties of her job in a satisfactory manner. Plaintiff performed well in her position and received recognition for her performance." [Doc. # 1 at 3].

Further, Stewart admits that her mental impairments don't limit her concentration and thinking during times other than 3AM to 7AM. The Court sees no reason not to apply the same rule to thinking and concentration as the Eighth Circuit has applied to working. If an inability to work at night does not substantially limit the major life activity of work, why should an inability to concentrate or think between 3 AM and 7AM be a substantial limitation as to those major life activities?

An analogous case is *Heisler v. Metro. Council*, 339 F.3d 622 (8th Cir. 2003). There, Kathy Heisler filed an employment discrimination claim under the ADA alleging that her employer failed to accommodate her disability. Heisler had been diagnosed with depression, which she claimed substantially limited her ability to concentrate. Her doctor restricted her to working only daytime hours because working at night exacerbated her condition. After her employer granted her FMLA leave and accommodated her for a period of time, she was then terminated because she was disqualified from performing an essential function of her job, working at night.

Heisler testified at her deposition that her lack of ability to concentrate caused her

to take twice as much time to perform a task and made it difficult to make a decision, but she also testified that she could perform her job during the day time and she received only favorable performance reviews. The Eighth Circuit found that Heisler did not sufficiently elaborate on how her depression affected the "condition, manner, or duration" of her ability to concentrate, and that she failed to produce evidence that her depression significantly restricted her ability to concentrate or work as compared to the general population. Therefore, the court held she was not disabled under the ADA.

Considering the relevant factors in 29 C.F.R. § 1630.2(j)(2)(i)-(iii), the Court finds as a matter of law that Stewart has failed to show that her impairments limited her major life activities of thinking, concentration and work.

### b. Whether Stewart was Regarded as Disabled or had a record of disability

Stewart's response to Defendant's Motion for Summary Judgment presents neither argument or evidence to show that she had a record of disability or that she was regarded as disabled by the City of Osage Beach. A party opposing summary judgment "may not rest upon mere allegations or denials . . . but must set forth specific facts showing there is a genuine issue for trial." *Satcher v. Univ. of Ark. at Pine Bluff Bd. of Tr.*, 558 F.3d 731, 734-35 (8th Cir. 2009) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986)). Without some guidance, this Court will not "mine a summary judgment record searching for nuggets of factual disputes to gild a party's arguments." *See Rodgers v. City of Des Moines*, 435 F.3d 904, 908 (8th Cir. 2006). Failure to oppose a basis for

summary judgment constitutes waiver of that argument.

In summary, because Stewart has not shown an ADA disability as defined in 42 U.S.C § 12102(2), she has failed to make a prima facie case of ADA discrimination and the City of Osage Beach's Motion for Summary Judgment is granted as to that claim.

### B. Stewart's Claim under the MHRA

The MHRA defines "disability" as:

> A physical or mental impairment which substantially limits one or more of a person's major life activities, being regarded as having such an impairment, or a record of having such an impairment, which with or without reasonable accommodation does not interfere with performing the job, utilizing the place of public accommodation, or occupying the dwelling in question.

Mo. Rev. Stat. § 213.010(4). The ADA and the MHRA define "disability" nearly identically. Additionally, in the absence of countervailing case law, Missouri courts have found that "in deciding cases brought under the MHRA, we are guided not only by Missouri law, but also by applicable federal employment discrimination decisions." *Thompson v. W.-S. Life Assurance Co.*, 82 S.W.3d 203, 206 (Mo. Ct. App. 2002) (citing *Pollock v. Wetterau Food Distrib. Group*, 11 S.W.3d 754, 762 (Mo. Ct. App. 1999)).

Stewart has not made any arguments specific to the MHRA, and instead incorporates her arguments under the ADA with regard to the MHRA. For the same reasons that Stewart has not established she is disabled under the ADA, she is also not disabled under the MHRA. Any differences between these two statutory provisions are immaterial to the analysis in this case.

## III. Conclusion

Accordingly, it is hereby ORDERED that Defendant City of Osage Beach's Motion for Summary Judgment [Doc. # 18] is GRANTED.

s/ Nanette K. Laughrey  
NANETTE K. LAUGHREY  
United States District Judge

Dated: July 11, 2011
Jefferson City, Missouri